```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**WESTFIELD INSURANCE CO.,**

       Plaintiff,

v.                                Civil Action No. 2:14-18854

RECORDS IMAGING & STORAGE, INC.
and CAMDEN-CLARK MEMORIAL HOSPITAL CORP.,
and JAMES F. SMITH and JOHN E. SMITH
as co-executors and on behalf of
the estate of Donald E. Smith,

       Defendants.


<u>MEMORANDUM OPINION & ORDER</u>

Pending is a motion for summary judgment, filed by Westfield Insurance Co. ("Westfield") on January 5, 2015.  The motion is not contested.  Only one defendant, Camden-Clark Memorial Hospital Corp. (the "Hospital"), filed a response; but the Hospital's response does not meaningfully engage with Westfield's arguments for summary judgment.


                              I. Background


Westfield seeks a declaration that it is not required to defend or indemnify Records Imaging & Storage, Inc. ("RIS") or the Hospital from claims asserted against each of them in a class action pending in the Circuit Court of Wood County, West Virginia, pursuant to a complaint referred to herein as the

"Underlying Complaint."

A. The Underlying Complaint

In February of 2012, the Hospital entered into a Hospital Service Agreement (the "Agreement") with RIS. See generally Plaintiff's Motion for Summary Judgment ("Pl.'s Mot."), Ex. B [hereinafter "Agreement"]. Under the terms of the Agreement, RIS was to "assist [the] Hospital with [the] release of patient health information" by "account[ing] for requests for health information" and "reproducing and forwarding the health information to requesters." Agreement § 1.1. The Agreement specified that RIS was "solely responsible for the collection of fees due from requesting parties for the fulfillment of health information requests," but admonished that "[a]ll fees and invoices for payment submitted directly to requesting parties [were to] comply strictly with [West Virginia] Code § 16-29-1, et seq." Id. § 4.1; see also id. § 2.5 ("RIS agrees that in performing Services pursuant to this Agreement, RIS and RIS Staff shall at all times act in accordance with all applicable state and federal law, regulations and requirements and with the applicable standards of any accreditation organization or Government Agency[.]").

RIS agreed to two conditions for the Hospital's protection. First, the Agreement directed RIS, at its "sole

2

cost and expense," to "obtain, keep in force, and maintain . . . : (a) Error and Omission coverage in an amount not less than $1,000,000 per occurrence and $1,000,000 annual aggregate covering all losses, claims, damages or liabilities, joint or several, arising out of the provision of Services by RIS to the Hospital under th[e] Agreement and naming the Hospital as an additional insured on a primary basis[;] (b) Commercial General Liability Insurance in the amount of not less than $1,000,000 per occurrence and $1,000,000 annual aggregate covering personal injury and property damage and naming the Hospital as an additional insured on a primary basis[; and] (c) Commercial General Liability Umbrella Insurance of not less than $1,000,000 per occurrence and $1,000,000 annual aggregate covering personal injury and property damage and naming the Hospital as an additional insured on a primary basis[.]" Id. § 2.3(a)-(c). Second, RIS agreed to "indemnify and hold [the] Hospital harmless from and against any and all actions, causes of action, losses, claims, suits, expenses, damages and costs and expense of every type whatsoever, including attorney fees and fines, arising out of or related to any act or omission by RIS or arising out of the failure of RIS to comply with any federal, state or local law, rule or regulation with respect to the services rendered or arising out of any duty or responsibility of RIS under th[e] Agreement." Id. § 6.4.

In March of 2014, James F. Smith and John E. Smith (the "Smiths"), acting as co-executors and on behalf of the estate of their father, Donald E. Smith, filed a class action complaint (the Underlying Complaint) against the Hospital and RIS in the Circuit Court of Wood County, West Virginia. See Pl.'s Mot., Ex. A. The Smiths alleged that RIS (as the Hospital's delegate) charged an unreasonable fee for processing their requests for their father's medical records, and that the amount charged bore no relationship to the actual expenses incurred in producing the requested records. See Underlying Complaint ¶¶ 23-32. More specifically, they charged that the Hospital and RIS were "able to produce patient medical records via electronic format for a more reasonable cost than the cost of producing paper records," but "engaged in [a] scheme and artifice to misrepresent . . . the availability of a more reasonable cost of receiving the[] medical records" that caused the Smiths to suffer "damages by being forced to pay more than the amount permitted by statute to obtain their medical records." Id. ¶¶ 31, 36, 38-39, 42, 48, 55.

The Underlying Complaint sought a declaration that the rates could not exceed "the reasonable expenses actually incurred in producing the records, plus a $10.00 search fee" (Count V), and also requested money damages for violations of

4

West Virginia Code § 16-29-1, et seq. (Count I), fraud and violations of the West Virginia Consumer Credit and Protection Act (Count II), "violations of the public policy of" West Virginia (Count III), and breach of implied contract (Count IV), all arising from the allegedly exorbitant rates that RIS charged for fulfilling records requests. Id. ¶¶ 18-61. The proposed class consisted of "former patients or patient representatives who requested copies of medical records from [the Hospital] at any time during the five (5) years preceding the filing of [the Underlying Complaint] and paid the fees charged by [the Hospital and RIS] to obtain their medical records." Id. ¶ 10.

On April 15, 2014, the Hospital wrote to RIS demanding a defense and indemnification from the claims asserted in the Underlying Complaint. Pl.'s Compl. ¶¶ 21-22; Hospital's Answer ¶¶ 21-22. RIS apparently turned to its insurer, Westfield. See Pl.'s Compl. ¶ 20.[1]

B. The Policy

From the documents in the record, it appears that Westfield's policy (the "Policy") with RIS ran from December 25, 2013 to December 25, 2014, and included four forms of coverage

---

[1] RIS never answered Westfield's declaratory judgment complaint, and the Hospital lacked any basis to admit or deny that RIS actually sought defense and indemnification from Westfield, as alleged in the complaint.

or "Coverage Parts": (1) a "Businessowners Coverage Part", (2) a "Commercial Auto Coverage Part", (3) a "Commercial Umbrella Coverage Part", and (4) "Terrorism Insurance Coverage". Pl.'s Mot., Ex. C at 27 [hereinafter the "Policy"].

The Businessowners Coverage Part and Commercial Umbrella Coverage Part are relevant here. Each provides liability coverage for "bodily injury," "property damage," or "personal and advertising injury," and imposes on Westfield a duty to defend against any "suit" seeking those damages. See Policy at 92, 164, 169-70. The Policy applies to bodily injury or property damage only if caused by an "occurrence," id. at 92, 164, which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 107, 180.

The "personal and advertising injury" coverage applies to claims "caused by an offense arising out of [RIS's] business." Id. at 92, 170. More specifically, the Policy defines a "personal and advertising injury" as an "injury, including consequential 'bodily injury', arising out of one or more of the following offenses:"

- "False arrest, detention or imprisonment";
- "Malicious prosecution";

- "[W]rongful eviction";

- "Oral or written publication . . . that slanders or libels a person or organization or disparages a person's or organization's goods, products or services";

- "Oral or written publication . . . of material that violates a person's right of privacy";

- "The use of another's advertising idea in [the insured's] 'advertisement'"; or

- "Infringing upon another's copyright, trade dress or slogan in [the insured's] 'advertisement'."

Id. at 107, 180.

In sum, a "suit" that Westfield must defend is defined as a "civil proceeding in which damages because of 'bodily injury', 'property damage', or 'personal and advertising injury' to which [the Policy] applies are alleged." Id. at 108, 181.

### C. This Action

Westfield initiated this action on June 19, 2014, seeking a declaration (1) that the Policy does not provide coverage for the defense or indemnification of RIS or the Hospital for the claims asserted in the Underlying Complaint, and (2) that Westfield has no duty to defend or indemnify RIS or the Hospital. Pl.'s Compl. at Prayer for Relief. The court has diversity-of-citizenship jurisdiction inasmuch as Westfield is an Ohio corporation with its principal place of business in that state, RIS and the Hospital are West Virginia corporations with

7

their principal places of business in West Virginia, the Smiths are West Virginia citizens, and the amount in controversy exceeds the jurisdictional threshold.

Westfield now moves for summary judgment, asserting that the Underlying Complaint alleges no "occurrence" and seeks no damages for "bodily injury," "property damage," or "advertising or personal injury," as those terms are defined by the Policy.  Neither the Smiths nor RIS have responded.  The Hospital presents no arguments in opposition to Westfield's interpretation of the Policy, noting only that, to "the extent that no coverage is found under Westfield's policy, and RIS has no other commercial general liability policy for the applicable time period[,] . . . such finding by the court is tantamount to a finding that RIS is in breach of its contract with [the Hospital]."  See Camden-Clark Memorial Hospital Corporation's Response to Plaintiff's Motion for Summary Judgment ("Hospital's Resp.") at 1.

## II. Applicable Standards

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); T-Mobile N.E. LLC v. City Council of City of

Newport News, Va., 674 F.3d 380, 385 (4th Cir. 2012). Because the case is here based on the diversity of the parties, the law governing the interpretation of the Policy is dictated by West Virginia's choice-of-law rules. Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct., 134 S. Ct. 568, 582 (2013). And because the Policy was made by a West Virginia company, RIS, through and with an insurance agency located in West Virginia, presumably acting on Westfield's behalf, the court applies West Virginia law. Joy Techs., Inc. v. Liberty Mut. Ins. Co., 421 S.E.2d 493, 496-97 (W. Va. 1992).

### III. Discussion

There is no dispute about the fact that RIS and the Hospital have been sued in state court. The allegations charged against them in the Underlying Complaint are not ambiguous. To refresh, the Smiths claim that RIS and the Hospital violated the State's public policy as embodied in two separate statutes, engaged in fraud, and breached an implied contract because they were "able to produce patient medical records via electronic format for a more reasonable cost than the cost of producing paper records," but "engaged in [a] scheme and artifice to misrepresent . . . the availability of a more reasonable cost of receiving the[] medical records" that caused the Smiths to suffer "damages by being forced to pay more than the amount

9

permitted by statute to obtain their medical records." See Underlying Complaint ¶¶ 31, 36, 38-39, 42, 48, 55. The pure question of law raised by Westfield's motion for summary judgment is whether the Policy creates a duty to defend and indemnify RIS and the Hospital against those allegations.

"[T]he duty of an insurer to defend an insured is generally broader than the obligation to provide coverage"; "if part of the claims against an insured fall within the coverage . . . the insurer must defend all of the claims[.]" State Bancorp., Inc. v. U.S. Fidelity & Guar. Ins. Co., 483 S.E.2d 228, 233 (W. Va. 1997) (per curiam) (quotation marks and citations omitted). On the other hand, "a liability insurer need not defend a case against the insured if the alleged conduct is entirely foreign to the risk insured against." Id. (quotation marks and citation omitted). Thus, to determine whether a claim triggers the duty to defend, the court "must examine the provisions of" the Policy and "determine whether any of the allegations in the [Underlying Complaint] are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." Id. at 234 (internal quotation marks and citation omitted).

Westfield maintains that the conduct alleged in the Underlying Complaint creates no duty to defend or indemnify

10

because the Smiths have not accused RIS and the Hospital of inflicting an injury covered by the Policy -- that is, an "occurrence" resulting in bodily injury or property damage, or one of the delineated offenses giving rise to advertising or personal injury. The court agrees.

### A. No Bodily Injury or Property Damage Coverage

The Policy provides coverage for bodily injury or property damage caused by an "occurrence." That term, as earlier noted, is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The word "accident" is not defined by the Policy, but West Virginia caselaw makes clear that an accident, in the context of a commercial liability insurance instrument such as the Policy, is "an event occurring by chance or arising from unknown causes[.]" Id. at 234 (quotation marks and citation omitted; alteration in the original). "[A]n 'occurrence' does not include actions which are intended by the insured." Id. at 235 (emphasis in the original). In other words, "the circumstances giving rise to the claimed damages or injuries must not have been 'deliberate, intentional, expected, desired, or foreseen' by the insured," when viewed from the perspective of the insured. Cherrington v. Erie Ins. Prop. & Cas. Co., 745 S.E.2d 508, 520 (W. Va. 2013); see also Syl. Pt. 1, Columbia

11

Cas. Co. v. Westfield Ins. Co., 617 S.E.2d 797, 797 (W. Va. 2005) ("In determining whether under a liability insurance policy an occurrence was or was not an 'accident' -- or was or was not deliberate, intentional, expected, desired, or foreseen -- primary consideration, relevance, and weight should ordinarily be given to the perspective or standpoint of the insured whose coverage under the policy is at issue.").

The supreme court of appeals' decision in State Bancorp illustrates the distinction, and it is particularly instructive here. In that case, homeowners sued for breach of contract, outrage, civil conspiracy, and violations of state banking laws, alleging that their bank and several officials conspired to defraud them by making "a bad loan . . . 'contrary to accepted credit and banking standards, . . . forcing [the homeowners] into bankruptcy and misleading the bankruptcy court for the purpose of acquiring . . . [the homeowners'] property.'" See 483 S.E.2d at 235. The defendants in turn sought a defense and indemnification from their insurer under a policy, like the one at issue here, that provided coverage for "damages because of 'bodily injury' or 'property damage' . . . caused by an 'occurrence.'" Id. at 234. The supreme court first observed that "a breach of contract . . . is not an event that occurs by chance or arises from unknown causes," and was, therefore, "not

an 'occurrence[,]'" covered by the policy in issue. Id. at 234-35. And the supreme court similarly reasoned that the claims based on fraud, outrage, conspiracy, and violations of state banking laws were also not "occurrences" because the "common theme" of the complaint accused the defendants of "engag[ing] in an intentional, outrageous scheme . . . [for] personal gain." Id. at 235-36 (emphasis in the original).

The same is true here. The Underlying Complaint alleges that RIS, the insured, engaged in fraud and breach of contract, and violated state law by overcharging the members of the class for paper copies of medical records, while concealing the fact that cheaper electronic records were available. There is no suggestion that RIS was unaware of the availability of the less expensive electronic records, or that RIS simply failed to proactively offer the electronic option. See Underlying Complaint ¶¶ 38-40 (alleging that RIS "concealed, suppressed, and omitted material facts" -- those facts presumably being the availability of electronic records). Instead, the Underlying Complaint claims that RIS's decision to provide the records in paper, rather than electronic form, was part of a deliberate scheme designed to permit RIS to charge -- and thus to receive -- more for its work than was reasonable under the circumstances. See Underlying Complaint ¶¶ 31-34, 38-40 (accusing RIS of

13

"engag[ing] in [a] scheme and artifice to misrepresent . . . the availability" of "electronic copies [that] were able to be provided at a more reasonable cost"). As in State Bancorp., the "common theme" of the Underlying Complaint is deliberate, intentional conduct leading to an expected, desired, or foreseeable result, rather than a chance occurrence arising from unknown causes. Accordingly, the Underlying Complaint does not allege an "occurrence" within the meaning of the Policy, and the bodily injury and property damage coverages do not apply.

### B. No Personal and Advertising Injury Coverage

The Policy's coverage for "personal and advertising injury" is also inapplicable. The alleged fraud, breach of contract, and violations of state law alleged in the Underlying Complaint are simply not "reasonably susceptible" of being interpreted as claims for false arrest, malicious prosecution, wrongful eviction, slander, libel, invasion of privacy, or copyright infringement. Accordingly, because the personal and advertising injury coverage under the Policy is limited to damages arising from those enumerated offenses, it does not apply to the claims alleged in the Underlying Complaint.

### C. No Duty to Defend

The Policy imposes a duty on Westfield to defend RIS

against any suit seeking damages for bodily injury, property damage, or personal and advertising injury to which the Policy applies. And if Westfield defends RIS against such a suit, it will, under certain conditions, also defend an indemnitee of RIS.[2] But for the reasons discussed above, the Policy does not apply to the claims alleged in the Underlying Complaint, and it is therefore not a "suit" that Westfield is obligated to defend.

## IV. Conclusion

The Policy provides coverage for injuries caused by an occurrence or by certain specified offenses, and requires Westfield to defend suits seeking to recover for such injuries. But the Underlying Complaint does not allege an occurrence within the meaning of the Policy or plead one of the specified offenses. As a result, the Policy does not cover the claims alleged in the Underlying Complaint and Westfield has no duty to defend RIS. And because Westfield has no duty to defend RIS, it follows that Westfield is not required to defend the Hospital.

Accordingly, it is ORDERED that the plaintiff's motion

---

[2] The Policy specifies that if Westfield "defend[s] an insured against a 'suit' and an indemnitee of the insured is also named as a party to the 'suit', [Westfield] will defend that indemnitee if," among other things, the suit "seeks damages for which the insured has assumed the liability of the indemnitee" and "the insurance applies to such liability[.]" Pl.s' Mot., Ex. C at 94, 172-73.

15

for summary judgment is granted. The court declares that the Policy, identified in the record as "Policy No.: BOP 0882391", does not provide coverage for the defense and indemnification of RIS or the Hospital for the claims asserted against each of them in the Underlying Complaint, and Westfield has no duty to defend or indemnify RIS or the Hospital for those claims.

    The Clerk is directed to transmit copies of this order to all counsel of record.

DATED: April 16, 2015

_____
John T. Copenhaver, Jr.
United States District Judge